Jury Trial Demanded

SS.#9515



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAR 15 2021 ★

BROOKLYN OFFICE

---

Stephanie Luna aka Officer Kooma

_____

_____

*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

-against-

NYC Taxi and Limousine Commission

    See attached

_____

*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

---

**Complaint for a Civil Case**

CV 21-1408

Case No. _____
*(to be filled in by the Clerk's Office)*

Jury Trial:    ☒ Yes    ☐ No
*(check one)*

GUJARATI, J.



KUO, M.J.

I.   **The Parties to This Complaint**

A.   **The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | |
|---|---|
| Name | Stephanie Luna |
| Street Address | 85-01 101street 2nd Floor |
| City and County | Richmond Hill and Queens |
| State and Zip Code | New York  11418 |
| Telephone Number | (718) 685-8584 |
| E-mail Address | smluna6782@gmail.com |

B.   **The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title (if known).  Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | NYC TAXI AND LIMOUSINE COMMISSION |
| Job or Title (if known) | |
| Street Address | 33 BEAVER STREET |
| City and County | NEW YORK, NY |
| State and Zip Code | NEW YORK, 10004 22ND FLOOR |
| Telephone Number | (212) 676-1013 |
| E-mail Address (if known) | UNKNOWN |

Defendant No. 2

| | |
|---|---|
| Name | DIANNA M. PENNETI |
| Job or Title (if known) | DEPUTY COMMISSIONER |
| Street Address | 24-55 BQE WEST |
| City and County | WOODSIDE AND QUEENS |

|                        |                                        |
| ---------------------- | -------------------------------------- |
| State and Zip Code     | NEW YORK  11377                        |
| Telephone Number       | (718) 267-4500                         |
| E-mail Address         | UNKNOWN                                |
| (if known)             |                                        |

Defendant No. 3

|                        |                                             |
| ---------------------- | ------------------------------------------- |
| Name                   | CARMEN ROJAS                                |
| Job or Title           | ASSISTANT COMMISSIONER OF HUMAN RESOURCES   |
| (if known)             |                                             |
| Street Address City    | 33 BEAVER STREET                            |
| and County State       | NEW YORK, NEW YORK                          |
| and Zip Code           | NEW YORK 10004  22ND FLOOR                  |
| Telephone Number       | (212) 676-1095                              |
| E-mail Address         | CARMEN.ROJAS@TLC.NYC.GOV                    |
| (if known)             |                                             |

Defendant No. 4

|                        |                                             |
| ---------------------- | ------------------------------------------- |
| Name                   | RONALD SOBERS                               |
| Job or Title           | PRIOR DEPT. CHIEF                           |
| (if known)             |                                             |
| Street Address City    | 24-55 BQE WEST                              |
| and County State       | WOODSIDE AND QUEENS                         |
| and Zip Code           | NEW YORK 11377                             |
| Telephone Number       | (718) 267-4500                             |
| E-mail Address         | UNKNOWN                                     |
| (if known)             | *SEE ATTACHMENT, CONT. DEFENDANTS*          |

## II.    Basis for Jurisdiction

Federal courts are courts of limited jurisdiction (limited power).  Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties.  Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case.  Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation and the amount at stake is more than $75,000 is a diversity of citizenship case.  In a diversity of citizenship case, no defendant may be a citizen of the same State as any plaintiff.

SS#01515

**CONT. DEFENDANTS**

**Defendant #5:**

**Ira Goldapper**
**Director of Labor Relations/Discipline**

**33 Beaver Street**
**New York, NY**
**New York, 10004 22nd Floor**

**(212) 676-1013**
**goldapperi@tlc.nyc.gov**


**Defendant #6:**

**Edwin Caraballo or Carabiallo**
**Investigator**

**33 Beaver Street**
**New York, NY**
**New York, 10004 22nd Floor**

**(212) 676-1013**


**Defendant #7:**

**Edwidge Joseph**
**Chief/Captain**

**2455 BQE West**
**Woodside, and Queens**
**New York, 11377**

**(718) 267-4500**


**Defendant #8:**
**Linda Andrews**
**Deputy Chief**

**2455 BQE West**
**Woodside, and Queens**
**New York, 11377**

**(718) 267-4500**
**Linda.Andrews@tlc.nyc.gov**

SS#9515

**Defendant #9:**

**Jose Torres**
**Deputy Chief**

**2455 BQE West**
**Woodside, and Queens**
**New York, 11377**

**(718) 267-4500**


**Defendant #10**

**Manuel Mateo**
**Deputy Chief**

**2455 BQE West**
**Woodside, and Queens**
**New York, 11377**

**(718) 267-4500**


**Defendant #11**

**Kelly**
**Deputy Chief**

**2455 BQE West**
**Woodside, and Queens**
**New York,  11377**

**(718) 267-4500**


**Defendant #12**

**Noreen Hollingsworth**
**Assistant Chief**

**2455 BQE West**
**Woodside, and Queens**
**New York, 11377**

**(718) 267-4500**

S.S#9515

**Defendant #13:**

**Sylvester Atuegbu**
**Captain**

**2455 BQE West**
**Woodside, and Queens**
**New York, 11377**

**(718) 267-4500**

**sylvester.Atuegbu@tlc.nyc.gov**


**Defendant #14:**

**Majorie Vichinsky**
**Lieutenant**

**2455 BQE West**
**Woodside, and Queens**
**New York, 11377**

**(718) 267-4500**


**Defendant #15:**

**Gavin Crandon**
**Lieutenant**

**2455 BQE West**
**Woodside, and Queens**
**New York, 11377**

**(718) 267-4500**

What is the basis for federal court jurisdiction? *(check all that apply)*

☒ Federal question                    ☐ Diversity of citizenship

Fill out the paragraphs in this section that apply to this case.

A.      **If the Basis for Jurisdiction Is a Federal Question**

List the specific federal statutes, federal treaties, and/or provisions of the United States Constitution that are at issue in this case.

_____

_____

_____

B.      **If the Basis for Jurisdiction Is Diversity of Citizenship**

1.      The Plaintiff(s)

a.      If the plaintiff is an individual

The plaintiff, *(name)* _____, is a citizen of the State of *(name)* _____.

b.      If the plaintiff is a corporation

The plaintiff, *(name)* _____, is incorporated under the laws of the State of *(name)* _____, and has its principal place of business in the State of *(name)* _____.

*(If more than one plaintiff is named in the complaint, attach an additional page providing the same information for each additional plaintiff.)*

2.      The Defendant(s)

a.      If the defendant is an individual

The defendant, *(name)* _____, is a citizen of the State of *(name)* _____. *Or is a citizen of (foreign nation)* _____.

4

b.    If the defendant is a corporation

The defendant, *(name)* _____, is incorporated under the laws of the State of *(name)* _____, and has its principal place of business in the State of *(name)* _____. *Or* is incorporated under the laws of *(foreign nation)* _____, and has its principal place of business in *(name)* _____.

*(If more than one defendant is named in the complaint, attach an additional page providing the same information for each additional defendant.)*

3.    The Amount in Controversy

The amount in controversy—the amount the plaintiff claims the defendant owes or the amount at stake—is more than $75,000, not counting interest and costs of court, because *(explain)*:

**PENSION, FUTURE CAREER OPPORTUNITIES, FORCED RESIGNATION**

**DISHONESTY IN SWORN COURT AFFIDAVITS.   (SEE ATTACHMENTS)**

_____

## III.    Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

**PLEASE SEE ATTACHMENTS**

_____

_____

_____

_____

_____



# JURY TRIAL DEMANDED

## CASE# 10204883 - FEDERAL CHARGE# 16GC000637

Stephanie Luna

Vs

The New York City Taxi & Limousine Commission

**Charges Demanded to be heard by the Federal Court - Gender Discrimination/Forced Resignation/Defammation of Character/Harassment/Retaliation/False (Malingering) Accusations/Violation of Seniority.**

**General Complaint with specific details**

This complaint is being filed against not only the Taxi & Limousine Commission but now also the New York State Division of Human Rights (EEOC), FOR NEGLECT and INCOMPETENCE. Judy A. Keenan, the District Director is completely responsible for allowing those who investigated my case in finding "No Probable Cause." These findings were determined without requesting my absolute proof to back up my claims legally.

I was hired in the year 2012 of July to perform TLC Officer duties. After completing my cadet course, I was assigned to **Captain Rodriguez** on an overnight tour. Officers conduct car stops everyday of their tours. **Car stops are one the most dangerous duties**, therefore I always conducted every stop safely and according to the training we received. I spoke up inference to following safely protocols when I noticed car stops were not conducted according to policies and procedures. **Captain Rodriguez** informed me, **this is the way its done on the overnight tour.** I continued to explain, I cannot be dishonest on a legal summons document, I need prima facie. Her response was, I was being difficult. I continued completing my duties legally everyday of my tour. In 2013, **I presented a doctors note** to the agency requesting a change of tour and light duty due to my pregnancy. I was assigned to the radio room but continued on

SS# 9515

the overnight tour. **Captain Rodriguez** continued her unprofessional behavior. Rodriguez **threatened to extend my probation** toward the end of 2013 for six months. I successfully passed my probation in July of 2013. Rodriguez and the agency stated, Im required to wear a uniform in my pregnant state. I asked, **"Is this in policy?"**. Since I observed three female officers not required to wear uniforms while pregnant. Rodriguez demanded to know what was my reading material on my station, she stated, Im only allowed to read TLC policy and procedures reading material. In July of 2017 I was assigned to the U.S Open operation, Rodriguez was the supervisor. She stated, "Congratulations, I heard you and James are married?" I didn't stepped away and didn't respond. She continued, **"Kooma you heard me?"** Rodriguez was abusing her authority by prying for information.

I spoke to **Dept. Chief Sobers,** inquiring to work in other departments in the agency. Sobers stated, *I can only work in the radio room due to my officer title.* However, that information is false. Three officers were assigned to positions outside the radio room during their pregnancy.

I contacted **Carmen Rojas from Human Resources** to inform her of the treatment I was receiving from the agency. I informed and forwarded my doctors recommendation for a change of tour. Rojas' response was, *"We (TLC agency) don't have to accommodate you, you choose to get pregnant."*

In July of 2017, a conference was held with **Chief Andrews, Chief Hollingsworth, Captain Torres, Captain Atuegbu, Lt. Crandon and Lt. Vichinsky, vs myself (Stephanie Luna)** inference to my Jan. 2016 to Dec.2016 Performance evaluation. **I wasn't informed of my rights** for a union rep., a witness and/or representative. I wasn't granted the testimony of the other Lt's. False accusations, improper documentation, false statements, and, an inaccurate evaluation.

**Chief Joseph** has displayed **unprofessional and hostile behavior** towards me many times. On three different occasions, he stormed out of meetings and refused to answer questions. The agency has cameras in the building and will correlate with my audio proof of his displaying unprofessional responses.

**Officers have been injured on the job by following unsafe protocols.** Entering unlicensed taxis and entering NYDP vehicles without a partner. A few weeks after my cadet training, Lt. Thomas was in accident. He entered a taxi and the driver drove off the service road onto the parkway. The Lt. Thomas was injured and this procedure continued. Officers were still told to enter the rear of the taxis. **Officer Joy, Vichinsky (now Lt) and myself were taken for a ride** and then driver demand us to get out of the car blocks away from our fellow officers. **Officer Cassarino and Officer Lamb were involved in accidents with joint operation with NYPD without their partners.** NYPD officers aren't responsible for TLC officers. On one occasion, I was told to work with one NYPD without my partner. I stated, **I was uncomfortable going without my partner,** Im concerned for my safety and my partner would be a witness if anything happened. **Chief Mateo** unprofessionally responsded, **"Do you go home with your partner?...."**

**In 2017 Ira Goldapper** (Director of Labor Relations/Discipline Investigator) scheduled a conference concerning my (Officer Kooma) Time and Leave usage. Myself and my union rep were prepared with city time usage and documents. However, **Goldapper charged me with Malingering.** He questioned my status with **James McMillian.** The questions he asked were

S,S # 9515

not related to **Time and Leave.** I stated, I don't understand these questions. Goldapper response was, **I don't have to understand the questions.** I was informed in the beginning of the conference I would have the right to ask questions. At the end of the meeting, I proceeded to ask a question, **Goldapper responded, "Go ask Mr.McMillian".** He then turned off his recording device and ended the meeting. He took my human rights to ask a question.


**In 2019 a Grievance conference** with **Chief Torres, Chief Kelly and Witness Lt. Simmons,** inference to my being denied the morning tour. The tour was determined based on **seniority, activity and time and leave.** My squad consisted of eight officers including myself and the squad was being split up. Six officers going to morning tour and two going to overnight. Another officer and myself **out ranked in seniority and activity.** In the conference they stated, I was going to the overnight based on two **PENDING charges,** one charge which went **unanswered for almost an entire year.** I also informed the Chiefs, I needed a morning tour due to **Child care issues.** My request disregarded after **Chief Kelly** stated, **"The new management takes child care very serious".** Chief Torres proceeded to say, **"To be real, there's another choice, this agency is what it is, people come and people go, you can always to choose to resign...".** My grievance was ignored. **I felt an overwhelming anxiousness and became extremely depressed.**

After completing an arrest on the overnight tour **Chief Andrews and Captain Joseph** attempted to force me to stay passed the end of my tour. After I repeated several times, I have child care issues, they continued to disregard my statements. **Captain Joseph dismissed me** and I proceeded to the locker room. As I was leaving the building, **Chief Andrews** asked to speak to me. She asked me to go into a room without cameras, and yells for Captain Joseph. **Andrews then demands, for my shield and my special patrolman's card.** I asked, **"is this policy?,"** and Andrews stated, **"Yes."** They didn't provide any paper work, a receipt, or any documented statements explaining, Why? At that moment, I was literally against the wall being verbally attacked. Chief Andrews stated **"You need to make some calls and then stated,** You can take care of the arrest **via fax and or phone call.** I was relieved due to, having to get home to my son. **She then changed her mind and refused to allow me to complete the arrest via phone or fax.** They wouldn't explain the reason for demanding my shield and special patrolman's card. **Chief Andrews and Captain Joseph violated my human rights and my rights as an officer of the City of New York.** A few hours later via a phone call, **Chief Kelly threaten me, stating he will come to my residence with NYPD to retrieve my shield and special patrolman's card, if I do not return back to the agency and turn it in.** Chief Kelly and Chief Mateo came to my residence with a statement of a 30 day suspension (before having a hearing) and a statement stating, they are retrieving my shield and special patrolman's card.


*DEMANDING THE FEDERAL COURT TO ALLOW MY CASE TO BE HEARD BEFORE A FEDERAL COURT JUDGE, SO THAT I MAY RECEIVE THE JUSTICE THAT I DESERVE. THE DISHONESTY TOLD IN SWORN STATEMENTS (PERJURY) BY AGENCY SUPERVISION. BEING FORCED TO RESIGN, I LOST MY PENSION AND HAVE HAD EXTREME HARDSHIP FINANCIALLY DUE TO THEIR UNPROFESSIONALISM. TLC, DEFAMED MY CHARACTER FOR A FUTURE CAREER IN ENFORCEMENT WITH THE TARNISHED RECORD THEY IMPOSED UPON ME.*

**IV.      Relief**

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

**PLEASE SEE ATTACHED REQUEST ALONG WITH PROOF SUBMITTED.**

_____

_____

_____

_____

**V.      Certification and Closing**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

**A.      For Parties Without an Attorney**

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: _____, 20__ .

Signature of Plaintiff      _____

Printed Name of Plaintiff   _____

6

S.S#9515

**IMMEDIATE NEED FOR SUMMONSES TO SERVE ALL DEFENDANTS IN THIS CASE**

**CARMEN ROJAS - EDWIN CARABALLO OR CARABILLO - IRA GOLDAPPER**

**LOCATED AT**
**33 BEAVER ST.**
**NEW YORK, NY 10004 22ND FLOOR**
**TEL# 212-676-1013**

**ALL OTHER DEFENDANTS - KELLY - MANUEL MATEO - EDWIDGE JOSEPH - NOREEN HOLINGSWORTH - LINDA ANDREWS - SYLVESTER ATUEGBU - JOSE TORRES - MAJORIE VICHINSKY - GAVIN CRANDON - RONALD SOBERS**

**LOCATED AT**
**NYC Taxi AND LIMOUSINE COMMISSION**
**24-55BQE WEST**
**WOODSIDE NY 11377**

**SOME OF THE DEFENDANTS HAVE RETIRED OR NO LONGER WORK AT THIS LOCATION AND I DO NOT HAVE ADDRESSES**

**Warmest Regards**

**Stephanie Luna**

IV RELIEF                                                                SS#9515

I hereby request the amounts of actual punitive damages/pain and suffering be made/ determined by a **FEDERAL COURT JUDGE & JURY,** for the charges filed against the **DEFENDANTS.**

**DEFAMATION OF CHARACTER**

**RETALIATION/HARASSMENT**

**GENDER DISCRIMINATION**

**FORCED RESIGNATION**

**PERJURY**

**VIOLATION OF HUMAN RIGHTS/IMPROPER & STATE INVESTIGATION**

**STEPHANIE LUNA**

$\frac{1-8}{210}$**789**   118

Date 3|15|2021

Pay to the order of *Clerk of the Court, USDC, EDNY* | $ 402.$\frac{00}{100}$

*Four hundred two* ——————— $\frac{00}{100}$   Dollars   Security Features Included. Details on Back.

**citibank**

CITIBANK, N.A.

Memo Filing Fee

⑆021000089⑆ 686343131311⑈ 0118

STATE DIVISION OF HUMAN RIGHTS
STATE OF NEW YORK EXECUTIVE DEPARTMENT
---------------------------------------------------------------------------x
STEPHANIE LUNA,

                          Complainant,

                -against-

NYC TAXI & LIMOUSINE COMMISSION,

                          Respondent.
---------------------------------------------------------------------------x

**VERIFIED COMPLAINT**
**Pursuant to Executive Law Article 15**

Stephanie Luna, receiving mail at 570 Lexington Avenue, Suite 1600, New York, New York 10022, charges the above-named Respondent, whose address is 24-55 Brooklyn Queens Expressway W., Woodside, New York 11377, with unlawful discriminatory practice relating to their employment based on familial status and gender, as well as retaliation. The most recent act of discrimination occurred through July 2019. The Particulars are as follows:

1.     Respondent is the agency of the New York City government that licenses and regulates the medallion taxis and for-hire vehicle industries.

2.     Respondent hired Ms. Luna as an Officer. Throughout the duration of her employment, Ms. Luna performed her duties in an exemplary manner. Nevertheless, Respondent subjected her to continuous discrimination.

3.     In 2013, during Ms. Luna's pregnancy, Respondent assigned Ms. Luna to an overnight duty. Ms. Luna informed Respondent that she could not work an overnight tour due to her pregnancy, and requested an accommodation to be changed to the morning tour; however, Respondent ignored her reasonable accommodation request. Notably, male officers were routinely granted tour changes based on their girlfriend or wives' pregnancies. Ms. Luna reached out to Human Resources Representative Carmen Rojas to discuss her tour change request;

however, Rojas merely replied, "You chose to get pregnant, we don't have to accommodate you." Ms. Luna asked Chief Sobers whether she could be relocated to another department to accommodate her pregnancy. Sobers denied Ms. Luna's request without explanation. Sobers stated that Ms. Luna's pregnancy "could not interfere" with her work. Sobers then forced Ms. Luna to attend Car Stop training, a physical training held outdoors that required standing for long periods of time, while she was seven months pregnant.

4.      In 2013, Respondent assigned Ms. Luna to the radio room. Chief Pagan and Captain Rodriguez forced Ms. Luna to wear a uniform; however, failed to impose this requirement upon other employees in the radio room. Ms. Luna asked why she was the only employee forced to wear a uniform. Rodriguez responded, "I don't understand the back and forth," and threatened to extend Ms. Luna's probationary period if she refused to wear the uniform.

5.      In 2013, Ms. Luna occasionally read books during her radio room shifts. Respondent's policy allowed employees to read in the radio room as long as it did not interfere with transmissions. However, Rodriguez saw Ms. Luna reading a book and told her that she was only allowed to read Respondent's policy and procedure material. Ms. Luna asked Rodriguez whether she would be allowed to read books and study if she was in school. Rodriguez replied that Respondent would make an accommodation for that but not for the pregnancy. Rodriguez also directed Lieutenant Arias to observe the material Ms. Luna was reading.

6.      In 2017, Captain Atuegbu shoved Ms. Luna in the back following a meeting. Ms. Luna asked Atuegbu not to shove her, but he merely replied, "that's the way I play." Atuegbu's discriminatory behavior continued thereafter, including but not limited to, yelling at Ms. Luna and behaving aggressively towards her.

7.      In June 2017, Rodriguez inappropriately inquired into Ms. Luna's marital status during work. Ms. Luna refused to answer, but Rodriguez continued to ask inappropriate personal questions.

8.      In July 2017, Ms. Luna received a negative performance evaluation for 2016 that erroneously claimed that Ms. Luna "created turmoil." Ms. Luna attended a meeting with Andrews, Chief Hollingsworth, Captain Torres, Atuegbu, Lieutenant Crandon and Lieutenant Vichinsky to discuss Respondent's inaccurate performance evaluation. During the meeting, Ms. Luna discovered that Respondent based her entire 2016 performance evaluation on only 3 months of evaluations from Vichinsky. In addition, Crandon claimed that Ms. Luna received a negative evaluation because, "the officers said they don't want to ride with you." However, Ms. Luna's performance evaluation should be based solely on the Lieutenant's comments, not other officers. In addition, Respondent refused to show Ms. Luna the alleged complaints from the officers.

9.      In August 2017, a colleague vandalized Ms. Luna's locker by scratching "LOSER" into the front side. Ms. Luna reported her vandalized locker to Lieutenant Rivera and Sobers. However, neither Rivera nor Sobers investigated the vandalism.

10.      In December 2017, Ms. Luna met with Director of Labor Relations and Discipline Ira Goldapper. During the meeting, Goldapper falsely accused Ms. Luna of falsifying sick notes and faking illnesses. In addition, Goldapper asked inappropriate questions about Ms. Luna's personal life, including but not limited to who she car pooled with to work. Ms. Luna asked Goldapper why he asked questions about her personal life, but he responded, "You don't have to understand my questions, just answer them." Goldapper then abruptly ended the meeting.

11.    In early 2018, Ms. Luna faced child care issues that caused her to be out of work for some time. Ms. Luna was also sick and overwhelmed with stress during the month of February 2018. Respondent later used this against her when charging her with excessive absenteeism after having a conversation with Goldapper and this situation being resolved.

12.    In 2018, Ms. Luna filed for FMLA leave to treat an illness; however, Chief Joseph refused to allow Ms. Luna to exercise her rights under FMLA leave. Ms. Luna asked Joseph to show her Respondent's FMLA policy, but Joseph responded, "You know what [Ms. Luna], you're always asking me to show you something in the policy, why don't you show me?" Later, Respondent posted notes on the tour desk written in bold, red and black ink, that stated Ms. Luna was not allowed to call out of work and that call out must be directed to supervisor. These notes were posted for all of Ms. Luna's colleagues to see in an effort to harass and embarrass her.

13.    In 2018, Respondent assigned Ms. Luna to a joint operation with the New York Police Department. During the operation, Captain Robinson attempted to force Ms. Luna to work without a partner. Ms. Luna's assignment without a partner was a serious safety risk. Ms. Luna told Robinson she felt unsafe without a partner, but Robinson accused her of disobeying his orders. Later, Chief Mateo called Ms. Luna and asked whether she disobeyed Robinson's order. Ms. Luna explained that she was not refusing the order, just stating that it was unsafe. Mateo inappropriately replied, "Do you go home with your partner? Why are you asking to go in an NYPD vehicle with your partner?" Mateo then ordered Ms. Luna to return to Respondent's headquarters and later sent her home without pay.

14.    In 2018, Respondent summoned Ms. Luna to a conference regarding Mateo's false allegation of insubordination. The conference was coordinated by a Hearing Officer.

During the conference, Ms. Luna explained to the Hearing Officer that she was not insubordinate, but that she merely requested a partner for safety reasons. Notably, Respondent's policy explicitly states that disobeying an order is not insubordination if it concerns an employee's safety. Respondent replied by inaccurately stating that Ms. Luna's alleged insubordination caused the operation to not be completed; however, the operation had continued as scheduled even after Ms. Luna was sent home. Following the conference, Respondent told Ms. Luna that she could either be placed on an unpaid suspension or undergo an Oath Hearing regarding Respondent's false allegation. Ms. Luna elected to undergo a hearing; however, Respondent failed to conduct that hearing.

15. In August 2018, Officer Booker complained about "street hailing," an operation in which Respondent's officers act as decoys with luggage and attempt to hail taxis. Respondent immediately accommodated Booker by changing his placement to avoid street hail operations but directed Ms. Luna to continue conducting street hail operations in poor conditions and standing long hours. Respondent accommodated Booker on multiple occasions at various locations such as Manhattan and the Bronx regarding his summonses.

16. In September 2018, Ms. Luna requested a temporary, emergency leave period to care for an illness. Respondent replied to Ms. Luna's request stating that if she took a leave of absence, Respondent would consider it job abandonment. However, Respondent's policy states that emergency leave should be granted as unpaid leave.

17. In May 2018, Respondent denied Ms. Luna's FMLA leave request without cause. Robinson informed Ms. Luna that the decision to deny her FMLA leave request came from Respondent's headquarters.

18.    In October 2018, Joseph issued Ms. Luna a written citation that falsely accused her of failure to complete her job in a competent manner. The citation was admittedly based on Ms. Luna's Time and Leave Usage. Ms. Luna requested to have her Union Delegate present to discuss the written citation, but Joseph refused. Joseph then falsely claimed that Ms. Luna refused to sign the citation.

19.    In 2019, Ms. Luna was nearly struck by a speeding taxi after completing a traffic stop. Following the incident, Ms. Luna asked whether she could go home for the day as she felt sick following the near accident. Robinson responded, "You cannot leave, sit down and relax, you will work the tour desk." Later that day, Robinson inappropriately asked Ms. Luna, "What's wrong with you?"

20.    In May 2019, Respondent assigned Ms. Luna to an undercover street hail operation in the Bronx. During the operation, Ms. Luna attempted to pull over multiple taxi's, but each taxi sped past, nearly striking and injuring her. Ms. Luna asked Robinson whether Respondent could move the undercover operation to a different location due to safety reasons; however, Robinson refused and ignored Ms. Luna's safety concern.

21.    In June 2019, Mateo forced Ms. Luna to complete an arrest of a taxi driver without a partner, equipment, or vehicle. Mateo permitted Ms. Luna's male partner to leave work early, rather than assist Ms. Luna in the arrest.

22.    In July 2019, Ms. Luna requested that she be assigned to the morning tour in order to care for her child; however, respondent ignored her accommodation and once again assigned her to the overnight duty. Chief Torres told Ms. Luna that her accommodation request was denied because of Respondent's previous false allegations of insubordination. Torres told Ms. Luna, "To be real, there's another choice, this agency is what it is, people come and people

go, you can always choose to resign." Ms. Luna informed Chief Kelly that being assigned to overnight duty affected her ability to care for her child, but Kelly ignored her concern and denied her accommodation request. Notably, Ms. Luna has seniority over the officers assigned to the morning tour.

23.    In July 2019, Ms. Luna completed an arrest while working the overnight tour. Ms. Luna asked Chief Andrews what she needed to do following the arrest. Andrews replied that she could either wait until the morning to go to the District Attorney's office to deliver the arrest documents, or fax the documents and wait for a call. Ms. Luna could not wait until the morning because she had to care for her child, so she elected to fax the documents and wait for a phone call. However, Andrews later stated that Ms. Luna had to physically go to the office to deliver the arrest documents. Ms. Luna explained to Andrews that she was unable to physically go because she needed to care for her child. Andrews contacted Joseph, who then told Ms. Luna that if she did not go to the District Attorney's office, "there would be consequences." However, Joseph later told Ms. Luna that she could go home. As Ms. Luna was leaving the building, Andrews pulled her aside and aggressively requested her Shield and ID card. Ms. Luna asked if her Union delegate could be present, but Andrews refused. At that point, Joseph arrived and yelled at Ms. Luna to turn over her ID and Shield. Ms. Luna refused, at which point Joseph stated, "You are disobeying a direct order, have a nice day," as he pointed to the exit.

24.    The next day, Ms. Luna called in sick to work. However, Respondent told Ms. Luna that her sick day was denied and told her to return her Shield and ID. At that point, Kelly took the phone and told Ms. Luna, "We are coming to your house with NYPD to pick up your Shield," and accused Ms. Luna of being a criminal. In the background, Ms. Luna heard Commissioner Pennetti (first name unknown) yelling, "Go get the shield, end of conversation."

Later that day, Mateo and Kelly showed up to Ms. Luna's home, without the NYPD, to recover Ms. Luna's Shield and ID. Thereafter, Respondent placed Ms. Luna on an unwarranted unpaid suspension for 30 days.

25.    As a result of Respondent's discriminatory conduct, Ms. Luna resigned from her position amounting to a constructive discharge. There remain pending falsified disciplinary charges against Ms. Luna.

26.    Additionally, Respondent retaliated against Ms. Luna for her participation as a potential witness in James McMillian's SDHR case.

27.    Based on the foregoing, Respondent discriminated against Ms. Luna based on familial status and gender, as well as retaliation. Respondent refused to accommodate Ms. Luna's reasonable accommodation request to be switched to the morning shift to take care of her child, and routinely provided male employees with special treatment not afforded to Ms. Luna. Following Ms. Luna's second request for accommodation, Respondent retaliated against her through false allegations of insubordination and fabrication of leave time. Respondent's discriminatory and retaliatory conduct resulted in an unlawful suspension.

28.    Respondent treated Ms. Luna differently as compared to similarly-situated non-female employees with respect to their terms and conditions of employment. These actions of discrimination and retaliation substantially interfered with Ms. Luna's employment.

29.    As a result of Respondent's unlawful discriminatory and retaliatory practices, Ms. Luna suffered significant financial ramifications, humiliation, outrage, and mental anguish for which Ms. Luna claims compensatory damages.

30.    Ms. Luna charges that Respondent violated Human Rights Law § 296, *et seq.*, NYC Admin. Code § 8-107, together with Title VII of the Civil Rights Act 1964 (42 USC §

S,S#9515

## VERIFICATION

State of New York

County of Queens      ss.:

    Stephanie Luna, being duly sworn, deposes and says: that they are the complainant herein; that they have read the foregoing complaint and knows the content thereof; that the same is true of his own knowledge except as to the matters therein stated on information and belief; and that as to those matters, they believe the same to be true.

_____
Stephanie Luna

Sworn to before me this
05 Day of October 2019

_____
Notary Public

DICELY TAVAREZ
Notary Public - State of New York
NO. 01TA6090482
Qualified in Queens County
My Commission Expires Apr 14, 2023

2000-e), based on familial status, gender, and retaliation, and Ms. Luna hereby authorizes the New York State Division of Human Rights to accept this verified complaint on behalf of the Equal Employment Opportunity Commission, subject to the applicable statutory limitations.

Dated: New York, New York
       September 6, 2019

WHITE, HILFERTY & ALBANESE P.C.

By: _____
    Nina A. Ovrutsky
    *Attorneys for Complainant*
    570 Lexington Avenue, 16th Floor
    New York, New York 10022
    (646) 690-8881

S.S#9515



STATE OF NEW YORK
**UNEMPLOYMENT INSURANCE APPEAL BOARD**
ADMINISTRATIVE LAW JUDGE SECTION
P.O. BOX 29002
BROOKLYN NY 11202-9002
(718) 613-3500
FAX:(718) 613-3566

JAYSON S. MYERS
CHIEF ADMINISTRATIVE LAW JUDGE
TRACIE L. COVEY
TERESA A. DEMEO
CHRISTOPHER M. TATE
MATTHEW J. TIERNEY
PRINCIPAL ADMINISTRATIVE LAW JUDGE

DENNIS TORREGGIANI
ALISON FERRARA
RACHEL FREEMAN
JUSTIN DENTON
CAROL PROCOPIO
BENJAMIN H. REYES
SENIOR ADMINISTRATIVE LAW JUDGE

**_DECISION AND NOTICE OF DECISION_**
_DECISIÓN Y AVISO DE LA DECISIÓN TOMADA_

A.L.J. Case No. 019-27199

IN THE MATTER OF:

Mailed and Filed: December 19, 2019

STEPHANIE KOOMA
85-01 101ST ST 2ND FL
RICHMOND HILL NY 11418-1112

THE CITY OF NEW YORK
TAXI&LIMOUSINE COMMISSION
2455 BQE WEST
WOODSIDE NY 11377

THE CITY OF NY DCAS
1 CENTRE ST RM 2180
NEW YORK NY 10007-1602

Department of Labor Office: 831

Hearing Requested: December 02, 2019

<ins>PLEASE TAKE NOTICE</ins> that this decision has been duly mailed on the date listed above. If you appeared at the hearing and are not satisfied with this decision, you may appeal within <ins>TWENTY DAYS</ins> from the date this decision was mailed. <ins>READ IMPORTANT INFORMATION ON REVERSE SIDE REGARDING YOUR RIGHT TO APPEAL.</ins> Any party who failed to appear at the hearing has the right to apply to reopen the case. For the application to be granted, the party must apply within a reasonable time and must establish good cause for its failure to appear.

<ins>POR FAVOR</ins> TOME NOTA: esta decisión ha sido debidamente enviada por correo en la fecha que aparece arriba. Si usted asistió a la audiencia y no está satisfecho con la decisión, puede apelar dentro de <ins>VEINTE DIAS</ins>contados a partir de la fecha en que esta decisión fue enviada por correo. <ins>LEA LA INFORMACIÓN IMPORTANTE AL REVERSO SOBRE SUS DERECHOS DE APELACIÓN.</ins> Cualquiera de las partes que falle en comparecer a la audiencia, tiene el derecho de solicitar que se reabra su caso. Para que dicha solicitud sea otorgada, la parte interesada debe solicitarlo dentro de un periodo de tiempo razonable y debe establecer buena causa por no haber comparecido a la audiencia.

DOCUMENTO IMPORTANTE. PUEDE OBTENER UNA TRADUCCIÓN DEL MISMO LLAMANDO
AL 1-888-209-8124 (FUERA DEL ESTADO DE NUEVA YORK 1-877-358-5306)

ISSUES:     Loss of employment through misconduct. ———→ _False statement_
Claimant's Application to Reopen Case No. 019-24519.

The Department of Labor issued the initial determination disqualifying the claimant from receiving benefits effective July 27, 2019, on the basis that the claimant lost employment through misconduct in connection with that employment and holding that the wages paid to the claimant by THE CITY OF NEW

AB 665-0 (10/06)

<u>A.L.J. Case No.019-27199</u>        STEPHANIE KOOMA                <u>Page 3</u>

YORK prior to July 27, 2019 cannot be used toward the establishment of a claim for benefits. The claimant requested a hearing.

The Claimant has applied to reopen A.L.J. Case No. 019-24519. In that case, the Administrative Law Judge sustained the initial determination based upon the claimant's failure to appear at a hearing on November 21, 2019.

A hearing was held at which testimony was taken. There were appearances by the claimant and on behalf of the employer

FINDINGS OF FACT: The claimant objected to the determination of misconduct and a hearing was scheduled for November 21, 2019. The Notice of Hearing was mailed to the claimant at her correct address. The Notice of Hearing was received at her residence on or about November 7, 2019, yet the claimant did not appear at the hearing. The claimant was not opening her mail regularly. Then, November 16, 2019 through November 20, 2019 her dad was hospitalized. While he was in the hospital, she allowed the mail to pile up in her mailbox and she was not opening her mail. After he returned home on November 20, 2019, the day before the hearing, she still did not open her accumulated mail until the end of November 2019, when she found and read the Notice of Hearing. By then, it was too late for her to appear at the November 21, 2019 hearing.

OPINION: On application duly made, an Administrative Law Judge may reopen a case where a decision was made upon or following the default of a party if such party shows good cause for the default. (See, Appeal Board Rule 12 NYCRR 461.8).

The credible evidence establishes that the claimant did not appear at the hearing held on November 21, 2019, because she was not looking through her mail on a regular basis and while her Dad was hospitalized, she even allowed her mail to pile up in her mailbox at her home and she did not open her mail until the end of November 2019 when at last she read the Notice of Hearing, by which time it was too late for her to appear. As the claimant finally came upon the hearing notice in the end of November 2019 when she finally opened her accumulated mail, and she does not deny receiving it at her residence in a timely fashion, it is reasonable to conclude that the hearing notice was received prior to the 21st. The claimant requested the hearing and was responsible to regularly retrieve and open her mail on a regular basis while in receipt of or claiming that she is entitled to receipt of unemployment insurance benefits. As she took none of these measures, but instead allowed her mail to accumulate unopened until after the hearing was held, I find that there was a lack of due diligence on the part of the claimant and that she is not entitled to be relieved from responsibility for the Notice contents. Accordingly, I conclude that the claimant has not established good cause for her failure to appear at the November 21, 2019 hearing and her application to reopen 019-24519 should be denied.

DECISION: The claimant's application to reopen A.L.J. Case No. 019-24519 is denied.

The initial determination, disqualifying the claimant from receiving benefits effective July 27, 2019, on the basis that the claimant lost employment through misconduct in connection with that employment and holding that the wages paid to the claimant by THE CITY OF NEW YORK prior to July 27, 2019 cannot be used toward the establishment of a claim for benefits, is sustained.

The claimant is disqualified from receiving benefits, effective July 27, 2019, until the claimant has subsequently worked in employment and earned remuneration at least equal to 5 times the claimant's weekly benefit rate for all claims filed on or before January 1, 2014, or until the claimant has subsequently worked in employment and earned remuneration at least equal to 10 times the claimant's weekly benefit rate for all claims filed after January 1, 2014. Employment and earnings from non-covered, excluded or self-employment will not count.

The claimant's wages from the employer paid prior to July 27, 2019 shall not count toward the establishment of any claim for benefits the claimant may file.

The claimant is denied benefits with respect to the issues decided herein.

/s/ Rachelle Rosenberg
**Administrative Law Judge**

Case # 019-27199

Kooma xxx-xx-9515

To whom it may concern,

I am writing this letter due to the decision made regarding my unemployment claim. It states in the letter I received, "On the basis that the claimant lost employment through MISCONDUCT", this is not true. I did not lose my position due to misconduct while working at the NYC Taxi & Limousine Commission. I resigned with good cause, which is my human right, due to the way supervision was mistreating me. For example, taking away my human right to simply ask a question regarding my safety on the job and further asking questions about their policy. On July 25/26, 2019, I was given the option by Chief Linda Andrews to complete an arrest by physically going to the ADA's office or either phone/fax the necessary information to ADA's office. I chose to fax the information because my shift was ending soon and I had to get home to my 5 year old son. This is the reason Chief Andrews gave me this option to leave on time. After I began completing my assignment/arrest, this option was taken away without explanation. I have an audio recording to back up my claim, showing Chief Andrews gave me the option to complete the arrest by fax/phone.

I am asking for a fair hearing to be heard immediately by the Unemployment Insurance Appeal Board, so that I may present my evidence and receive my unemployment claim which is necessary for my survival.

Kooma, Stephanie

S.S# 9515

 **Division of Criminal Justice Services**

May 26, 2020

Ms. Stephanie Kooma
85-01 101st St. – 2nd floor
Richmond Hill, NY 11418

Dear Ms. Kooma:

I am writing to inform you of the change in your peace officer basic training certification status due to your recent removal from the NYC Taxi and Limousine Commission on the Central State Registry of Police Officers and Peace Officers.

Effective October 26, 2016, amendments to Part 6056 of Title 9 of the Compilation of Codes, Rules, and Regulations of the State of New York (9 NYCRR) requires a law enforcement agency to report to the Division of Criminal Justice Services (Division) when an officer ceases to serve in their agency and the reasons for such separation.

Further, in accordance with Section 9 NYCRR 6056.4(d), a peace officer's certificate of completion attesting to the fulfillment of the training requirements set forth in section 2.30 of the Criminal Procedure Law (CPL 2.30) is deemed invalid when an officer ceases to serve pursuant to subdivision (c)(4) or (5) of section 6056.4.

Please be advised the Division was notified by the NYC Taxi and Limousine Commission on April 21, 2020 that effective September 3, 2019 you ceased to serve their department due to incompetence or misconduct pursuant to section 9 NYCRR Part 6056.2(h). Consequently, your peace officer basic training certification has been invalidated.

Should you have any questions or concerns, please contact me by email at stephanie.russell@dcjs.ny.gov.

Very truly yours,

*Stephanie Russell*

Stephanie Russell
Criminal Justice Program Specialist

11/26/2020

Dear Stephanie Russell,

I am writing this letter to first inform you, In no such way was I ever Incompetent, nor did I ever perform my work duties as an Officer of The Taxi and Limousine Commission under any type of "Misconduct." If my work performances are now completely investigated for the time I served with the agency, It will show, not only my great performance, but also my team player spirit on the job. For instance, I was assigned to train new officers and walked with them through the beginning stages of their career's at TLC. This is an extreme defamation of my character and career to state in a legal document, I was this type of person/worker.

My reason for resigning from the agency was solely based upon the way I was being treated at the agency. My seniority rights were violated and my right to stand up for myself. Reporting the mistreatment and wrong doings were all ignored and held against me.  I was retaliated against and decided to take legal action due to my Human Rights being violated.

The agency has my resignation letter which was submitted to Commissioner Diane Pennetti on September 3rd of 2019.

Please be advised I am no longer carrying the name Kooma and enclose/attached is my resignation letter.

Regards

Stephanie Luna (Maiden Name).

Mobile#718-685-8584
smluna6782@gmail.com

Officer Kooma, S
Shield #1068

August 30th, 2019


NYC Taxi and Limousine Commission
2455 BQE West
Woodside NY, 11377


To whom it may concern

Please be advised this is my letter of resignation submitted to the NYC
Taxi and Limousine Commission on this day, August 30th of 2019.


I received an email from Mr. Goldapper, the Director of Discipline, located
at 33 Beaver St in regards to a settlement. He stated, "it would be
advantageous for Officer Kooma to resign as part of a settlement to the
pending charges, rather than just resign". He also stated, "If Officer Kooma
resigns with pending disciplinary charges, her record will indicate
resignation pending disciplinary action".


I cannot sign off on this forced 30 day suspension settlement if I am not in
agreement, especially due to the unprofessional investigation which was
concluded without my ever being interviewed by TLC's Director of
Discipline/Employee Code of Conduct Investigative Unit.


In the year of 2018 I was charged with insubordination. I was given the
options of, 7 days suspension, grievance or an Oath hearing. I continued
to work for TLC and did not hear anything else as per this charge for over
a year. On 8/21/2019 Ironically Mr Goldapper brought forth the possibility
of being granted an Oath Conference within weeks of this date. This first
incident would have been resolved highly in my favor if properly
investigated based on factual evidence.

SS# 9515

During the month of July in conference with Chief Kelly and Chief Torres, I openly expressed my concerns in reference to working the overnight shift and how I was unfairly chosen to work the overnight shift. In the year of 2012, I worked the overnight for over a year during my first year of service with TLC. Chief Torres gave me an option during the conference. His words were, "if you do not like the direction the agency is going, you can resign". I fell into a depressive state as to how I was chosen to work the overnight and also the mistreatment I experienced during my service with the agency, yet I continued to carry out my duties professionally and productively.

I really enjoyed my position at TLC and I took pride in writing summonses properly according to the law under the Oath I took as an officer. The mistreatment started as I began standing up for my safety, which is my human right.

On the morning of July 26th, 2019, I had an arrest and was given the option by Chief Andrews to fax over the necessary documents or speak to the ADA's office via landline to complete such said arrest due to my childcare issues. I was forced into a conference room without a witness or Union Representative, asked to hand over my shield and ID cards.

This unfair practice within TLC's workplace has left me with no other option other than to resign for my own safety and well being. The retaliatory tactics and ultimatums given has caused a huge amount of stress. This stress has been recognized by my doctor and I also mentioned this to Captain Joseph. I was becoming depressed prior to July 26th of 2019 due to the many incidents at the agency.

Kooma, S

**CITY OF NEW YORK**
**TAXI AND LIMOUSINE COMMISSION**
————————————————————X
**In the Matter of Charges**

    - against -

**Stephanie Kooma**

                       **STIPULATION OF SETTLEMENT**

————————————————————X

WHEREAS, on July 26, 2019, the New York City Taxi and Limousine Commission ("TLC") charged Stephanie Kooma ("Kooma"), a TLC employee, with violations of the TLC Employee Code of Conduct; and

WHEREAS, the parties now mutually desire to dispose of the charges without the time and expense of further formal proceedings;

NOW, IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned, as follows:

1.      Kooma is charged with violations of the TLC Employee Code of Conduct on July 26, 2019, attached herein, for which she had served a 30-day pre-hearing suspension pursuant to New York Civil Service Law §75(3).

2.      Kooma agrees to an unpaid suspension of two weeks (70 hours) and resigns her employment with the TLC, effective August 31, 2019. Kooma waives any and all rights to contest this separation from the TLC.

3.      TLC agrees to withdraw the charges and pay Kooma backpay equal to two weeks (70 hours).

4.      All monies received pursuant to this Stipulation of Settlement are subject to all applicable deductions including, but not limited to, Federal, State and City withholding taxes.

5.      TLC makes no representations as to how it will respond to reference requests from the City of New York sources or in response to governmental orders. In response to all other reference requests, if Kooma consents, the TLC will only confirm employment and the dates of employment.

6.      By agreeing to this Stipulation, Kooma waives any and all rights granted to her by her union contract, including the filing of a grievance, Section 75 of the Civil Service Law, any other administrative provision, or otherwise to contest the charges or the penalty.  Kooma further understands that this waiver of her rights is final and irrevocable and that this Stipulation will be kept permanently in her personnel file.

7.      Kooma hereby releases the City of New York ("City"), the TLC and all other agencies, departments, officials, employees, representatives and agents of the City and the TLC, past and present, and their heirs, executors, administrators, successors and assigns from each and every claim, whether at law or in equity, and right to damages arising from the acts and omissions alleged in the charges or from the TLC's investigation, prosecution, and disposition of the charges.

8.      Kooma hereby acknowledges that she has been apprised of her right to representation by her Union and/or attorney of her choice.  Kooma hereby acknowledges that she has been fully and fairly represented by a representative of her choice in this matter, including the negotiation of this Stipulation. Kooma also acknowledges that she has read and understands the terms of this Stipulation and that she enters into it of her own free will.

**Dated:**


By: _____        By: _____
    **Stephanie Kooma**                    **Ira Goldapper, Esq.**
    *Employee*                            *Director of Discipline/Labor Relations*
    **TLC**                               **TLC**


By: _____
    **James McMillian**
    *Representative for Employee*

2



| New York City Taxi and Limousine Commission | | | Patrol Guide |
| --- | --- | --- | --- |
| Uniform/Equipment | | | Chapter 4 |
| Official Agency Shield, Identification Card and Special Patrolman Card | | | Section 1 |
| Date Issued: 12-12-17 | Date Effective: 12-15-17 | Revision No.: 01 | Page: 1 of 4 |

## PURPOSE

To inform employees of the Taxi and Limousine Commission ("TLC") of the procedures pertaining to the issuance, use, wearing, and prohibited use of official agency shields and identification cards.

## DEFINITIONS

**Agency Shield** – TLC issued shield to designated and authorized employees for use in connection with official TLC business.

**Agency Identification Card** - TLC issued card with employee name and photo used for identification as a TLC employee and entry into TLC facilities.

**Special Patrolman Card** – NYPD issued card with employee name and photo used to identify that individual as one who has been designated as a Special Patrolman.

## POLICY

**Issuance of Agency Shields, Identification Cards, and Special Patrolman Cards**

1. Agency Shields and Identification Cards are the property of the TLC.

2. TLC employees are issued Agency Shields and Identification Cards to identify them as City employees authorized to engage in official TLC business. These Shields and Identification Cards are to be used in the manner described herein.

3. Agency Shields and Identification Cards shall only be used for official TLC business.

4. Agency Shields will be of a shape, color, and numerical sequence to differentiate between ranks.  When issued to members of the Uniformed Services Bureau, the Shields will be part of their uniform. Shield must be worn on the outermost garment of the uniform.

5. Agency Shields will be signed for upon issuance and will be returned upon severance from service or at any time directed by management. Additionally, any employee who is not working due to either an on-the-job or other injury and who, in the determination of his or her supervisor, shall be on extended medical leave shall surrender his or her shield until that employee is returned to duty.

| Official Agency Shield, Identification Card and Special Patrolman Card | Chapter 4 | Section 1 | Page 2 of 4 |
|---|---|---|---|

6. Special Patrolman cards will be returned upon severance from service or at any time directed by management. Additionally, any employee who is not working due to either an on-the-job or other injury and who, in the determination of his or her supervisor, shall be on extended medical leave shall surrender his or her identification cards until that employee is returned to duty.

7. Identification Cards will be returned upon severance from service or at any time directed by management.

**Responsibility for Agency Shields, Identification Cards and Special Patrolman Cards**

8. TLC employees are responsible for personally safeguarding their Shield, Identification Card and Special Patrolman Card at all times.

9. Any loss or theft of a Shield, Identification Card and Special Patrolman Card must be immediately reported to the Enforcement Tour Commander who will make an entry of notification in the USB Tour Desk Log, and notify the on-duty Deputy Chief. Employee will also report to the police precinct within the jurisdiction where the loss occurred and notify the Tour Commander of the time and the date said items were discovered missing, the police precinct within the jurisdiction where the Shield was lost or stolen and the police complaint report number. Employee will provide:

   - Copy of the police complaint report (UF61).
   - Submit a written report through proper channels of all facts and circumstances. Attach police complaint report (UF61) to the report.
   Supervisors must forward the reports to through proper channels, ensuring all copies are forwarded to:
     (1)   Chief of Patrol
     (2)   Assistant Commissioner of Enforcement
     (3)   Director of OFFM
     (4)   Assistant Commissioner of Administrative Services
     (5)   Deputy Commissioner of USB
     (6)   Director of Discipline and Labor Relations

10. The Assistant Commissioner of Administrative Services will assign a replacement shield and forward to the Office of Fleet and Facility Management for assignment.

11. Officer will be notified when and where to obtain replacement Shield from the local base Office of Fleet and Facility Management.

SS#9515

**Patrol Guide**

| Official Agency Shield, Identification Card and Special Patrolman Card | Chapter 4 | Section 1 | Page 3 of 4 |
|---|---|---|---|

12. Deputy Chief will contact Human resources for a new Identification Card and to ensure the old Identification Card has been deactivated.

13. Any loss or theft of a Shield, Identification Card and Special Patrolman Card due in whole or in part to an employee's negligence or prohibited activity may result in discipline.

14. Any damage to a Shield, Identification Card and Special Patrolman Card must be immediately reported to the employee's supervisor along with a written report of the facts and circumstances. Supervisor will forward the report through proper channels.

15. TLC employees shall be responsible for the replacement cost of lost or non-job related damage to Shields, Identification Cards and Special Patrolman Cards.

**Utilization of Agency Shields, Identification Cards and Special Patrolman Cards**

16. Identification Cards and Special Patrolman Cards **must** be carried at all times while on-duty.

17. Shields will be displayed at all times under the following conditions:

- When in uniform and/or on-duty.
- When in civilian clothes and engaged in enforcement action.
- While on TLC property.
- While attending hearings or court on TLC business.
- When responding to and/or while on official TLC business.
- When requested to be seen by a member of the public.
- When the wearing of the Shield is mandated by supervisory personnel.

18. Shields shall be worn with nameplate and appropriate leather backing at all times while in uniform on the outermost garment, over left breast, except if outermost garment has sewn shield patch (e.g., golf type shirt, etc.).

19. Wear nameplate ¼ inch below and centered under shield on outermost garment. DO NOT wear nameplate on raincoat.

20. Carry Shield, Identification Card and Special Patrolman Card at all times when in uniform or civilian clothes and present when necessary to establish identification.

S. S#9515

**Patrol Guide**

| Official Agency Shield, Identification Card and Special Patrolman Card | Chapter 4 | Section 1 | Page 4 of 4 |
|---|---|---|---|

**Prohibited Uses**

21. Shields, Identification Cards and Special Patrolman Cards shall only be used for official TLC business.

22. The issued Shield, Identification Card or Special Patrolman Card shall **not** be used for any of the following:

   - To impersonate or imply that you are a member of the New York City Police Department or any agency other than the TLC.
   - To obtain free passage on the NYC Transit System or any other transit system, to obtain free admission to any event that requires an entrance fee, or for any other unlawful gains.
   - By any person other than the person to whom they were issued.
   - To persuade any person to act in an unlawful act, to influence another to extend favors, courtesies and/or gain (monetary or otherwise) to the holder or another.
   - To conduct any TLC business or to engage in enforcement action off-duty without management authorization.

23. Any person who misuses, duplicates, attempts to duplicate, impersonates, permits the unauthorized use of the Shield, Identification Card, or Special Patrolman Card by another person, possesses any other unauthorized identification card or other shield, or engages in any action prohibited by this order or by any laws or regulations, will be formally disciplined up to and including termination of employment.

*S. S#9515*

**New York City Taxi and Limousine Commission**



| Uniformed Service Bureau | | Order No. |
|---|---|---|
| Annual Leave Policy – Enforcement Division | | 01-16 |
| Date Issued: 12/22/15 | Date Effective: 1/1/16 | Revision No. | Page 1 of 5 |

## PURPOSE

To provide guidelines and procedures regarding requests for Annual Leave to employees assigned to the Enforcement Division of the Uniformed Service Bureau.

## POLICY

It is the policy of the Taxi and Limousine Commission to maintain adequate staffing levels to meet the needs of the Agency.

## DEFINITIONS

1. Annual Vacation Picks –      The request to use accrued annual leave days made for the upcoming calendar year.

2. Off-Grid Request –      The request to use accrued annual leave during the current calendar year, outside of the preselected vacation picks.

3. Emergency Annual Leave –      Annual leave used due to unforeseen circumstances preventing an employee from reporting to work.

## PROCEDURE

1. Annual leave accrues at the following rates:

| Years of Service | Monthly Accrual | Allowance |
|---|---|---|
| Beginning of 15th year | 15:45 hours | 189:00 hours or 5 work weeks and 14 hours |
| Beginning with 8th year | 14:35 hours | 175:00 hours or 5 work weeks |
| Beginning with 5th year | 11:40 hours | 140:00 hours or 4 work weeks |
| First Year | 8:45 hours | 105:00 hours or 3 work weeks |

S. S# 9515

**New York City Taxi and Limousine Commission**



| Uniformed Service Bureau | | Order No. |
|---|---|---|
| Annual Leave Policy – Enforcement Division | | 01-16 |
| Date Issued: 12/22/15 | Date Effective: 1/1/16 | Revision No. | Page 2 of 5 |

2. **Annual Vacation Picks**

   a. Annual vacation lists should be prepared prior to January 1st to permit commencement of vacations on January 1st and should be prepared in a manner which maintains adequate staffing levels.

   b. Annual vacation picks are granted according to rank and seniority within rank.

      i. The date of actual appointment to the rank will determine seniority.

      ii. If there are multiple Inspectors with the same date of appointment, then seniority will be based on list number, in which the lower list number controls.

      iii. If there are multiple supervisors (e.g., Lieutenants and Captains) with the same date of appointment to the rank, then the Agency start date will control.

   c. The approvals of annual vacation picks are conditional on the employee having sufficient accrued annual leave and/or compensatory leave at the time of the scheduled annual leave.

      i. Approved annual leave may be subsequently denied in whole or in part if the employee does not have sufficient accrued annual leave and/or compensatory leave to cover the scheduled vacation.

      ii. Dates listed in the Electronic Summonsing & Administration Program ("ESAP") are only conditionally approved dates.

   d. Employees should select their annual vacation picks in increments of 1 week periods, with 2 weeks being the maximum amount of time taken at any one time.

      i. The selection of annual vacation picks shall not exceed an employee's annual accruals.

      ii. Annual vacation picks should start at the beginning of the employee's scheduled weekly tour.

   e. Two individual vacation days may be selected as part of the annual vacation picks, subject to the following guidelines:

      i. If the individual vacation days are not selected with the annual vacation picks, they may be selected at a later date consistent with the off-grid procedure.

*S, S#9515*

**New York City Taxi and Limousine Commission**



| Uniformed Service Bureau | | Order No. |
|---|---|---|
| Annual Leave Policy – Enforcement Division | | 01-16 |
| Date Issued: 12/22/15 | Date Effective: 1/1/16 | Revision No. | Page 3 of 5 |

ii. Employees **MAY NOT** select any day before or after a City-observed holiday.

f. The Floating Holiday must be selected as part of the annual vacation picks.

g. Once selected and conditionally approved, annual vacation picks must be taken (so long as there is sufficient accrued annual leave and/or compensatory leave to cover the scheduled annual leave) and may not be changed unless a change of tour has occurred which affects the original annual vacation pick.

h. Employees must enter their conditionally approved annual vacation pick into CityTime no later than **eight (8) workdays** prior to their scheduled annual leave and email their Captain (or immediate supervisor in the cases of a Captain or Deputy Chief's request).

i. On April 30th (the end of the leave year for non-managerial employees), a non-managerial employee's annual leave balance cannot exceed two years of accruals. All annual leave balances on April 30th exceeding the two-year maximum will be converted to sick leave, unless permission is granted to "carry-over" more than the allowable limit. If an employee was not able to use their annual leave because of their workload, he or she may request a waiver and obtain permission from the Division Head to carry-over more that the allowable limit.

    i. Employees who receive such notification must notify their immediate supervisor as soon as possible.

3. **Off-Grid Requests**

a. An employee who is requesting annual leave outside of the preselected annual vacation picks must make such request by sending an email to his or her Captain no less than **eight (8) workdays** before the requested date.

    i. If the employee making such request is a Captain, then the email shall be sent to his or her assigned Deputy Chief.

    ii. If the employee making such request is a Deputy Chief, then the email shall be sent to the Assistant Chief for review and approval.

S.S#9515

**New York City Taxi and Limousine Commission**



| Uniformed Service Bureau | | Order No. |
|---|---|---|
| Annual Leave Policy – Enforcement Division | | 01-16 |
| Date Issued: 12/22/15 | Date Effective: 1/1/16 | Revision No. | Page 4 of 5 |

b. The Captain (or Deputy Chief in the instance that a Captain is making such request) must forward the employee's email request along with his or her recommendation to the Deputy Chief (or Assistant Chief in the instance of a Captain's request) for approval within **three (3) workdays** of receiving the request. The email to the Deputy Chief (or Assistant Chief) must contain the following:

   i. The subject line should read: "Annual Leave Request for [employee's name]";

   ii. The date(s) requested;

   iii. The employee's scheduled hearings or court appearances, if any, on the requested days;

   iv. Staffing level of Squad (i.e., how many inspectors and supervisors will be on duty on each of the requested dates?);

   v. Employee's current annual leave and/or compensatory leave available; and

   vi. The Captain's recommendation based on whether or not there will be adequate staffing levels for the Squad.

c. The Deputy Chief (or Assistant Chief in the instance that a Captain is making such request) shall approve or deny such request and shall email such approval or denial to the Captain (or Deputy Chief for a Captain's request) within **three (3) workdays** of receiving the Captain's (or Deputy Chief's) emailed recommendation.

   i. The emailed response must contain the entire email chain, beginning with the initial emailed request.

   ii. If the Deputy Chief (or Assistant Chief in the instance that a Captain is making the request) approves the request, then the Deputy Chief (or Assistant Chief for a Captain's request) must mark the approved day(s) in ESAP.

d. The employee making the off-grid request should follow up with their assigned Captain (or Deputy Chief for a Captain's request) after **six (6) workdays**.

e. Guidelines for adequate staffing levels for a Squad:

   i. No more than one (1) supervisor in a Squad should be on leave for a particular day, if possible.

   ii. For Squads with six (6) or fewer assigned Inspectors, no more than two (2) Inspectors should be on leave for a particular day, if possible.

*S. S# 9/5/5*

**New York City Taxi and Limousine Commission**



| Uniformed Service Bureau | | | Order No. |
|---|---|---|---|
| Annual Leave Policy – Enforcement Division | | | 01-16 |
| Date Issued: 12/22/15 | Date Effective: 1/1/16 | Revision No. | Page 5 of 5 |

    iii. For Squads with more than six (6) assigned Inspectors, no more than three (3) Inspectors should be on leave for a particular day, if possible.

4. **Emergency Annual Leave**

    a. An emergency is defined as unforeseen circumstances preventing you from reporting to work. Anything that could have been planned for is not an emergency.

        i. For example, the fact that an individual's car insurance will lapse is not grounds for use of emergency annual leave. However, an unexpected event such as an automobile accident would be grounds for use of emergency annual leave.

    b. Employees must personally notify the Command Desk of an emergency absence as soon as possible, but no less than fifteen (15) minutes prior to the start of their tour.

    c. Immediately upon the employee's return to work, he or she must submit a Request for Leave in CityTime, and submit an explanation of the emergency along with corroborating documentation to their direct supervisor.

        i. Late submission subjects an employee to Leave Without Pay.

        ii. The submission of corroborating documentation does not necessarily mean that the absence will be approved.

    d. Emergency Annual Leave requires a supervisory conference upon the second instance of an absence charged to Emergency Annual Leave within Absence Control Calendar.

    e. Determining factors for the approval or disapproval of leave will be:
        i. The circumstances involved;
        ii. The documentation submitted; and
       iii. Frequency of prior emergency absences.

    f. Unscheduled absences may result in the loss of pay, counseling, extension of probation, and/or disciplinary action that may result in termination.

EEOC Form 161 (11/2020)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

To: **Stephanie Luna**
**c/o White, Hilferty & Albanese**
**570 Lexington Avenue, 16th Fl**
**New York, NY 10022**

From: **New York District Office**
**33 Whitehall Street**
**5th Floor**
**New York, NY 10004**

[ ] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **16G-2020-00637** | **Holly M. Shabazz,**<br>**State & Local Program Manager** | **(929) 506-5316** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ] The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

[X] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*[signature]*

**Judy A. Keenan,**
**District Director**

December 28, 2020

*(Date Issued)*

Enclosures(s)

cc:

**Attn: Director of Human Resources**
**CITY OF NEW YORK, TAXI AND LIMOUSIN**
**33 Beaver St. 22nd floor**
**New York, NY 10004**

S.S#9515



**5:45**

49    **3 Messages**

**S**  SpiritKing 1009    3:19 PM

To: 1009slj@g... & 1 more >

## Email

From: Atuegbu, Sylvester (TLC)
Sent: Tuesday, June 13, 2017 12:12 PM
To: Kooma, Stephanie (TLC)
Subject: Fwd: Officer Kooma

Officer Kooma see below email. Please respond to the email by stating exactly what you want to rebut in your 2016 evaluation.
Thank you

Sent from my iPhone

Begin forwarded message:

From: "Andrews, Linda (TLC)" <Linda.Andrews@tlc.nyc.gov>
Date: June 12, 2017 at 1:41:45 PM EDT
To: "Atuegbu, Sylvester (TLC)" <Sylvester.Atuegbu@tlc.nyc.gov>
Subject: Officer Kooma

Captain ,

Please have Officer Kooma send you an email stating exactly what she wants to rebut .

Thank You

See More



S.S#
9515

**5:45**

< 49    **3 Messages**    ∧ ∨

Sent from my iPhone On Mar...

S    SpiritKing 1009    3:20 PM
To: 1009slj@g... & 1 more >

# Email 1

From: Kooma, Stephanie (TLC)
Sent: Wednesday, June 14, 2017 4:35 PM
To: Atuegbu, Sylvester (TLC)
Subject: RE: Officer Kooma

Good Afternoon Capt. Atuegbu

As per yours and Chief Andrews' request. I am not totally clear as to what is being asked of me. In the meeting with yourself, Chief Andrews and Capt. Torres, I asked many of the questions I needed to ask.

My question regarding my time and was answered, in which I am totally satisfied. However, I am still unclear as to why I received an unsatisfactory in reference to my "performance and field patrol assignment," which is why I'm assuming, Capt. Torres requested a future meeting with LT Crandon and LT Vichinsky present.

I'd greatly appreciate, LT Dicostanza being present as well, as he and I worked together closely for two months of the year in question.


Regards


Officer Kooma,S.

From: Atuegbu, Sylvester (TLC)

See More                                    ↰

*Proper 6 month Evaluation Package*



## PERFORMANCE EVALUATION
**TLC**    **SEIZURE OFFICER**



**EMPLOYEE'S NAME:**    Stephanie Kooma          **C/S TITLE:** Inspector

**SOCIAL SECURITY #:**    xxx-xxx-xx          **UNIT:** _____

**SUPERVISOR'S NAME:**  Forest Hamlor          Squad 2 Enforcement

**APPRAISAL PERIOD:**    From: Jan. 8, 2015          **TO:**   June 8, 2015

All Standards are to be graded as follows:
**O**=Outstanding; **VG**=Very Good; **G**=Good; **C**=Conditional; **U**=Unsatisfactory; **X**=Un-ratable

**TASK # 1**    **Performs field patrol assignment.**
**STANDARDS**   Officer performs her field assignment as instructed and performs her Peace Officer duties as
required. Maintains a daily log of the enforcement activities.  Complies with supervision

**GD**
(GRADE)

**TASK # 2**    **Issues summonses for violations of Rules and Regulations of the TLC or the Administrative Code.**
**STANDARDS**   Officer displays a working knowledge of the administrative code and issues summonses with
minimal errors.

**GD**
(GRADE)

**TASK # 3**    **Seized vehicle for violations of Rules and Regulations of the TLC or the Administrative Code.**
**STANDARDS**   Officer has demonstrated an excellent ability to find and seize unlicensed vehicles, in
addition to assisting co-workers to do the same.

**GD**
(GRADE)

**TASK # 4**    **Appears and testifies at Hearings conducted at the Commission Tribunal with respect to summonses issued pursuant to the Administrative Code and TLC Rules and Regulations. Testifies at Criminal Court Hearings as part of their official duties.**
**STANDARDS**   Officer has appeared at the administrative hearings and Criminal Court when required on
time and properly prepared to testify credibly

**GD**
(GRADE)

**TASK # 5**    **Interacts with and assists member of the public and FHV industry when necessary**
**STANDARDS**

She presents a professional and courteous demeanor while performing her duties

**VG**
(GRADE)

**TASK # 6**    **Reports to various duty assignments and abides by Absence Control policy of the City and the Agency.**
**STANDARDS**   Officer complies with the Absence Control Policy as she returned back from Maternity leave
She has not misused any days for EAL

**GD**
(GRADE)

**TASK # 7**    **Operates City vehicles and safeguards all issued equipment.**
**STANDARDS**   Officer operates the vehicle in a safe manner and safeguards all issued equipment

**VG**
(GRADE)

The employee's overall rating is:

☐ Outstanding    ☐ Very Good    ☑ Good    ☐ Conditional    ☐ Unsatisfactory    ☐ Un-ratable

PERFORMANCE EVALUATION

 **PERFORMANCE EVALUATION**
TLC **SEIZURE OFFICER**

## COMMENTS REGARDING OVERALL RATING
(Include attendance, punctuality, impact on the work of others, and other factors if relevant to the employee's performance.)

Officer's evaluation is based on her efforts, productivity, professionalism, teamwork and most importantly her time and leave.

Officer has only been with the squad a short time yet her experience and the manner by which she performs her duties have had a positive impact for the squad. She has assisted supervision on many occasions in situations that didn't run too smoothly with the inexperienced Officers. As time accrues her contribution can really be recognized and commended which will really improve her overall rating. The limited time served with the squad caused me to reserve the higher level rating until consistency throughout a given period is demonstrated. She had been out on Maternity leave prior being assigned to Squad 2. *In addition to her TASKS StandARDS she has filled and assisting as an Operator for our Central Communications Division on a moment notice. Performing at a high rate of efficiency. SH 141*

## PLANS AND RECOMMENDATIONS
(Plans to improve employee's performance; plans and recommendations to capitalize on employee's strengths; plans and recommendations to change conditions.)

Include her in the special joint operations as a lead responsible for her enforcement team. Use her suggestions for enforcement details.

## COMMENTS ON APPRAISAL INTERVIEW

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| _____ | _____ |
| **Employee's Signature** | **Date** |
| Forest/Hamlor _____ | July 31,2015 |
| **Supervisor's Signature** | **Date** |
| _____ | 8/14/15 |
| **Deputy Chief's Signature** | **Date** |
| _____ | _____ |
| **Reviewer's Signature** | **Date** |

SS# 9515

## ABSENCE AND TARDINESS CALENDAR
### January 1, 2015 – June 30, 2015

Name: Stephanie Kooma                Title: Inspector

Division: Enforcement                Work Unit: Sq 2

Supervisor's Name: F. Hamlor

Is Employee in Sanction Status?    No ☑ Yes        ☐ Sanction Status began on: _____
Is this a new employee on Probation?    No ☑ Yes        ☐ Probation will end on: _____

To the Supervisor:  Note every instance of absence or lateness on the calendar below using the following codes:

[ ] = Citywide Holiday          D = Documented Sick Leave              T = Tardy
[ ] = Observed Holiday          Q = Undocumented Sick Leave            X = Other
V = Annual Leave                U = Undocumented Sick Leave (Before or After a Scheduled Holiday)    F = In the Field
C = Comp. Time (OT)             W = Worker's Compensation LODI
A = Advanced Time               N = Absence Without Leave              Line through code = half day (e.g. V #)
L = Leave Without Pay           S = Scheduled Days Off                 = number of Hours

| Jan | Absence | 0 | | | | | Feb | Absence | 0 | | | | | Mar | Absence | 0 | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Tardiness | 0 | | | | | | Tardiness | 0 | | | | | | Tardiness | 0 | | | | |
| **S** | **M** | **T** | **W** | **T** | **F** | **S** | **S** | **M** | **T** | **W** | **T** | **F** | **S** | **S** | **M** | **T** | **W** | **T** | **F** | **S** |
| | | | | [1] | 2 | 3 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 | 15 | [16] | 17 | 18 | 19 | 20 | 21 | 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 18 | [19] | 20 | 21 | 22 | 23 | 24 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 | | | | | | | | 29 | 30 | 31 | | | | |

| April | Absence | 0 | | | | | May | Absence | 2 | | | | | Jun | Absence | 1 | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Tardiness | 0 | | | | | | Tardiness | 0 | | | | | | Tardiness | 0 | | | | |
| **S** | **M** | **T** | **W** | **T** | **F** | **S** | **S** | **M** | **T** | **W** | **T** | **F** | **S** | **S** | **M** | **T** | **W** | **T** | **F** | **S** |
| | | 1 | 2 | 3 | 4 | | | | | | | 1 | 2 | | 1 | 2 | 3 | 4 | 5 | 6 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 26 | 27 | 28 | 29 | 30 | | | 24 | [25] | 26 | 27 | 28 | 29 | 30 | 28 | 29 | 30 | | | | |
| | | | | | | | 31 | | | | | | | | | | | | | |

**Undocumented Sick Leave**
Instances ___0___ Hours ___0___

**Total Sick Leave**
Hours 26.75   26:15

**Tardiness**
Instances ___0___ Hours ___0___

* When there is an instance of Undocumented Sick Leave (Code Q or U), turn to the reverse to determine Stepping Level.

When a Citywide Holiday falls on a Saturday, it is observed on the preceding Friday.  When a Citywide Holiday falls on a Sunday, it is observed on the following Monday.

SS#9515

## New York City Taxi & Limousine Commission
## Absence Control Record of Supervisory Conferences

Employee Name: _____

Absence Leave Period: ___January 1, 2015 – June 30, 2015_____

Informal Discussion (to be held at the Supervisor's discretion based on the employee's previous record)

Employee was absent on _____ due to the following reasons: _____

_____

_____

Date:_____                    Supervisor: _____

### STEP 1

Employee was absent on _____ due to the following reasons: _____

_____

I discussed the rules regarding absences with the employee. I informed the employee that he/she was now on STEP 1 and suggested the following: _____

_____

_____

### STEP II

Employee was absent on _____ due to the following reasons: _____

_____

I reminded the employee of the rules regarding undocumented sick leave and the continued use of undocumented sick leave would not meet the City's requirements for satisfactory performance. I informed the employee that the next undocumented sick leave would result in the employee being placed on a warning and suggested the following: _____

_____

### STEP III

Employee was absent on _____ due to the following reasons: _____

_____

I gave the employee a final warning that all future sick leave must be documented in order for the employee to be paid for the absence. I explained to the employee that he/she would have to submit medical verification of the illness at least thought the end of the current sick leave period.

Date: _____ Supervisor: _____ Employee: _____
                              (Signature)                              (Signature)

SS# 9515

## UNAUTHORIZED LATENESS HISTORY

Employee's Name _Stephanie Kooma_    Title _Inspector_

Supervisor's Name _Forest Hamlor_    Title _Captain_

Division/Sectio/Unit _Enforcement_

**\*\*\*The first three (3) Unauthorized Lateness may be handled informally.**

| Categories | Lateness # 1 | Lateness # 2 | Lateness # 3 |
|---|---|---|---|
| Day & Date | | | |
| AM / Lunch | | | |
| Reason | | | |
| | | | |
| Action Taken | | | |
| | | | |
| Employee's Signature | | | |
| Date | | | |
| Supervisor's Signature | | | |
| Date | | | |

### \*\*\*FIRST UNAUTHORIZED LATENESS WARNING

Meet with employee to review Lateness Policy. Determine method (s) to assist the employee to improve. A Conduct Conference Memorandum is required.

Day & Date of 4th Lateness _____ Circle One:    AM - LUNCH

Reason:_____

_____

_____

ActionTaken_____

_____

_____

Employee's Signature_____ Date_____

Supervisor's Signature_____ Date_____

(Send Copies To Employee, Division Manager & Personnel Office)

### \*\*\*SECOND UNAUTHORIZED LATENESS WARNING

Meet with employee to review Lateness History. Warn employee that additional Latenesses can result in Disciplinary Action. A Conduct Conference Memorandum is required.

Day & Date of 5th Lateness _____ Circle One:    AM - LUNCH

Reason:_____

_____

_____

ActionTaken_____

_____

_____

Employee's Signature_____ Date_____

Supervisor's Signature_____ Date_____

(Send Copies To Employee, Division Manager & Personnel Office)

SS#9515

## ***THIRD UNAUTHORIZED LATENESS WARNING

Meet with employee to review Lateness History. Warn employee that the next unauthorized lateness will result in Disciplinary Action. A Conduct Conference Memorandum is required.

Day & Date of 6th Lateness _____ Circle One:     AM - LUNCH

Reason:_____

_____

_____

ActionTaken_____

_____

_____

Employee's Signature_____ Date_____

Supervisor's Signature_____ Date_____

_____ Send Copies To Employee, Division Manager & Personnel Office) _____

## ***DISCIPLINARY RECOMMENDATION

Supervisor is to record additional unauthorized lateness (es). Supervisor will forward a memorandum to the Division Manager recommending Disciplinary Action be taken against said employee. An updated Unauthorized Lateness History Form should accompany each memorandum.

Day & Date of 7th Lateness _____ Circle One:     AM - LUNCH

Reason:_____

_____

_____

ActionTaken_____

_____

_____

Supervisor's Signature_____ Date_____

(Send Copy To Personnel Office)

Day & Date of 8th Lateness_____ Circle One     AM     LUNCH

Reason_____

_____

_____

ActionTaken_____

_____

_____

Supervisor's Signature_____ Date_____

Use Additional Sheets If Appropriate

SS#9515

## Employee Emergency Annual Leave (EAL) Usage
## Supervisory Conference

Date of Conference: _____

Employee Name:      _____

Date of Absence:      _____    Duration of Absence: _____

_____

Reason for EAL Usage:      _____

_____

_____

_____

_____

Supervisor's Comments/Recommendations:      _____

_____

_____

_____

_____

Instances of EAL Usage to Date:      _____

Employee's Signature:      _____    Date: _____

Supervisor's Signature:      _____    Date: _____

cc:      **Human Resources Division**

EAL Supervisory Form 10/02

TAXI LIMOUSINE COMMISSION                    ENFORCEMENT DIVISION

NAME OF EMPLOYEE   Kooma , Stephanie

| DATES ABSENT | NO. DAYS ABSENCE | REASON FOR ABSENCE | SUPERVISORY CONFERENCE INTERVIEW DETAILS AND ACTION TAKEN | SUPERVISOR'S NAME & TITLE | DATE OF MEETING | STEP |
|---|---|---|---|---|---|---|
| MAY 2015 | | | | | | |
| 22 | 1 | S/L | Documented family illness 1:45 charge to A/L | | | |
| 23 | 1 | S/L | ANNUAL other USAGE Documented FMLA | | | |
| June | | | | | | |
| 27 | 1 | S/L | charged to Holiday comp | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

ABSENCE CONTROL SHEET



https://prod.citytime.nycnet/ct/ctWeb/login.do

8/13/2015

CityTime

SS#9515



CityTime

Welcome Forest Hamlor, ID 15565

Home   Help   Logout

**Search Leave Requests**

| | | |
|---|---|---|
| Search For | My Requests    Others' Requests | First Name    s    Begins With |
| Dates | Custom Dates | Last Name    k    Begins With |
| *Start Date | 01/01/2015 | CityTime Id |
| *End Date | 08/13/2015 | PMS Ref # |
| Request Status | All | Active/Inactive Status    Active |
| Request Id | | Pending Batch Approval Processing    All |
| Request Type | All | Approval Org    Select |
| Docs Required | All | CBU |
| | | Title    Select |
| | | FLSA Status    All |
| | | Leave Labor Agreement |

Search    Reset

\* = Required Field

| Select | Request ID | Name | PDC | Leave Starting | Leave Ending | Total Hours | Type | Reason | Status | MTV |
|---|---|---|---|---|---|---|---|---|---|---|
| ☐ | 162679831 | KOOMA, STEPHA... | 0022 | 05/22/2015 05:30 | 05/22/2015 15:15 | 08:45 | ANNUAL LEAVE | Child Care | Cancelled | MTV |
| ☐ | 162754603 | KOOMA, STEPHA... | 0022 | 05/22/2015 05:30 | 05/22/2015 12:30 | 07:00 | SICK LEAVE | Documented for F... | Approved Fi... | MTV |
| ☐ | 162933128 | KOOMA, STEPHA... | 0022 | 05/22/2015 12:30 | 05/22/2015 15:15 | 01:45 | ANNUAL LEAVE | Other Usage | Approved Fi... | MTV |
| ☐ | 162754614 | KOOMA, STEPHA... | 0022 | 05/22/2015 13:30 | 05/22/2015 15:15 | 01:45 | LEAVE WITHO... | Family Illness | Cancelled | MTV |
| ☐ | 162679832 | KOOMA, STEPHA... | 0022 | 05/23/2015 05:30 | 05/23/2015 15:15 | 08:45 | ANNUAL LEAVE | Child Care | Cancelled | MTV |
| ☐ | 162754626 | KOOMA, STEPHA... | 0022 | 05/23/2015 05:30 | 05/23/2015 15:15 | 08:45 | SICK LEAVE | Charged to Annual | Cancelled | MTV |
| ☐ | 162850353 | KOOMA, STEPHA... | 0022 | 05/23/2015 05:30 | 05/23/2015 12:30 | 07:00 | SICK LEAVE | Documented for F... | Approved Fi... | MTV |
| ☐ | 162851114 | KOOMA, STEPHA... | 0022 | 05/23/2015 12:30 | 05/23/2015 15:15 | 01:45 | ANNUAL LEAVE | Other Usage | Approved Fi... | MTV |
| ☐ | 166286092 | KOOMA, STEPHA... | 0022 | 06/27/2015 05:30 | 06/27/2015 15:15 | 08:45 | SICK LEAVE | Charged to Holiday | Approved Fi... | MTV |
| ☐ | 166230798 | KOOMA, STEPHA... | 0022 | 06/27/2015 05:30 | 06/27/2015 15:15 | 08:45 | SICK LEAVE | Charged to Holiday | Cancelled | MTV |
| ☐ | 166429830 | KOOMA, STEPHA... | 0022 | 07/11/2015 05:30 | 07/11/2015 15:15 | 08:45 | ANNUAL LEAVE | Scheduled Vacation | Approved Fi... | MTV |

Select All | Clear All

Approve

Version: CITYTIME_8.11_1.0.10

Press the "F11" key to toggle between "Full Screen" and "Normal" view.

*Prory 6month Evaluation Package*



# PERFORMANCE EVALUATION
## TLC  SEIZURE OFFICER



**EMPLOYEE'S NAME:** Stephanie Kooma

**C/S TITLE:** Inspector

**SOCIAL SECURITY #:** xxx-xxx-xx

**UNIT:**

**SUPERVISOR'S NAME:** Forest Hamlor

Squad 2 Enforcement

**APPRAISAL PERIOD:** From: July 1, 2016

**TO:** December 31, 2015

All Standards are to be graded as follows:
**O**=Outstanding; **VG**=Very Good; **G**=Good; **C**=Conditional; **U**=Unsatisfactory; **X**=Un-ratable

| | |
|---|---|
| **TASK # 1** **STANDARDS** **Performs field patrol assignment.** Officer performs her field assignment as instructed and performs her Peace Officer duties as required. Maintains a daily log of the enforcement activities.  Complies with supervision Demonstrates very good knowledge of precinct patrol sectors | **VG** (GRADE) |

**TASK # 2**  **Issues summonses for violations of Rules and Regulations of the TLC or the Administrative Code.**

**STANDARDS**  Officer displays a working knowledge of the administrative code and issues summonses with minimal errors.      She has assisted others demonstrating above average knowledge and has produced very work

**VG** (GRADE)

**TASK # 3**  **Seized vehicle for violations of Rules and Regulations of the TLC or the Administrative Code.**

**STANDARDS**  Seizure Enforcement activity is not part of our actions anymore , but she issues a volume violations with very good narratives using the administrative codes with minimal errors.

**GD** (GRADE)

**TASK # 4**  **Appears and testifies at Hearings conducted at the Commission Tribunal with respect to summonses issued pursuant to the Administrative Code and TLC Rules and Regulations. Testifies at Criminal Court Hearings as part of their official duties.**

**STANDARDS**  Officer does not appear for hearings unless requested on rare ocassions. However she does issues  administratve violations for unlicensed activity when observed during general or Street hail enforcement. She is prepared to appear for Criminal and Civil court hearings as needed. She produces prima-facie summonses for court that are legible.

**GD** (GRADE)

**TASK # 5**  **Interacts with and assists member of the public and FHV industry when necessary**

**STANDARDS**

She presents a professional and courteous demeanor while performing her duties.
She sets an excellent example for new employees to follow

**VG** (GRADE)

**TASK # 6**  **Reports to various duty assignments and abides by Absence Control policy of the City and the Agency.**

**STANDARDS**  Officer complies with the Absence Control Policy as she returned back from Maternity leave
She has not misused any days for EAL. She one Tardy incident and one EAL

**GD** (GRADE)

**TASK # 7**  **Operates City vehicles and safeguards all issued equipment.**
**STANDARDS**  Officer operates the vehicle In a safe manner and safeguards all issued equipment

**VG** (GRADE)

The employee's overall rating is:

☐ Outstanding   ☑ Very Good   ☐ Good   ☐ Conditional   ☐ Unsatisfactory   ☐ Un-ratable

## PERFORMANCE EVALUATION

 **PERFORMANCE EVALUATION**
**TLC**    **SEIZURE OFFICER**

## COMMENTS REGARDING OVERALL RATING
(Include attendance, punctuality, impact on the work of others, and other factors if relevant to the employee's performance.)

Officer's evaluation is based on her efforts, productivity, professionalism, teamwork and most importantly her time and leave.

Officer has only been with the squad a short time yet her experience and the manner by which she performs her duties have had a positive impact for the squad. She has assisted supervision on many occasions in situations that didn't run too smoothly with the inexperienced Officers.   As time accrues her contribution can really be recognized and commended which will really improve her overall rating.  The limited  time served with the squad caused me to reserve the  higher level rating until consistency throughout a given period  is demonstrated. She had been out on Maternity leave prior being assigned to Squad 2

The above statements are repeated from the last evalution because of her consistency she has demonstrated.

## PLANS AND RECOMMENDATIONS
(Plans to improve employee's performance; plans and recommendations to capitalize on employee's strengths; plans and recommendations to change conditions.)

Include her in the special joint operations as a lead responsible for her enforcement team.  Use her suggestions for enforcement details.  It is advisable that she recieves training and prepped as a group leader with the goal of becoming a supervisor

## COMMENTS ON APPRAISAL INTERVIEW

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| **Employee's Signature** | 3/23/2016  **Date** |
| Forest/Hamlor  **Supervisor's Signature** | Jan. 7, 2016  **Date** |
| **Deputy Chief's Signature** | 1/15/15  **Date** |
| A C Falls  **Reviewer's Signature** | **Date** |

SS#9515

## ABSENCE AND TARDINESS CALENDAR
### July 1, 2015 – December 31, 2015

Name: _Stephanie Kooma_   Title: _Inspector_

Division: _Enforcement_   Work Unit: _Sg 2_

Supervisor's Name: _Forest Hamler_

Is Employee in Sanction Status?   No ☐   Yes ☑   ☐ Sanction Status began on: _____

Is this a new employee on Probation?   No ☑   Yes ☐   ☐ Probation will end on: _____

To the Supervisor: Note every instance of absence or lateness on the calendar below using the following codes:

| | = Citywide Holiday   D = Documented Sick Leave   T = Tardy
[ ] = Observed Holiday   Q = Undocumented Sick Leave   X = Other
V = Annual Leave   U = Undocumented Sick Leave (Before or After a Scheduled Holiday)   F = In the Field
C = Comp. Time (OT)   W = Worker's Compensation LODI
A = Advanced Time   N = Absence Without Leave   Line through code = half day (e.g. V #)
L = Leave Without Pay   S = Scheduled Days Off   = number of Hours

### Jul
Absence ___   Tardiness _0_

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   | 1 | 2 | [3] | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 |   |

### Aug
Absence ___   Tardiness ___

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   |   | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 |   |   |   |   |   |

### Sept
Absence ___   Tardiness ___

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   | 1 | 2 | 3 | 4 | 5 |
| 6 | [7] | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 |   |   |   |

### Oct
Absence ___   Tardiness ___

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   | 1 | 2 | 3 |   |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | [12] | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

### Nov
Absence ___   Tardiness ___

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | [3] | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | [11] | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | [26] | 27 | 28 |
| 29 | 30 |   |   |   |   |   |

### Dec
Absence ___   Tardiness ___

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | [25] | 26 |
| 27 | 28 | 29 | 30 | 31 |   |   |

| Undocumented Sick Leave | Total Sick Leave | Tardiness |
|---|---|---|
| Instances ___ Hours ___ | Hours ___ | Instances ___ Hours ___ |

* When there is an instance of Undocumented Sick Leave (Code Q or U), turn to the reverse to determine Stepping Level.

When a Citywide Holiday falls on a Saturday, it is observed on the preceding Friday. When a Citywide Holiday falls on a Sunday, it is observed on the following Monday.

SS#9515

## New York City Taxi & Limousine Commission
### Absence Control Record of Supervisory Conferences

Employee Name: ____S. Kooma____

Absence Leave Period: ___July 1st, 2015 – December 31st, 2015___

Informal Discussion (to be held at the Supervisor's discretion based on the employee's previous record)

Employee was absent on _____ due to the following reasons: _____

_____

_____

Date:_____                                    Supervisor: _____

### STEP 1

Employee was absent on _____ due to the following reasons: _____

_____

I discussed the rules regarding absences with the employee. I informed the employee that he/she was now on STEP 1 and suggested the following: _____

_____

_____

### STEP II

Employee was absent on _____ due to the following reasons: _____

_____

I reminded the employee of the rules regarding undocumented sick leave and the continued use of undocumented sick leave would not meet the City's requirements for satisfactory performance. I informed the employee that the next undocumented sick leave would result in the employee being placed on a warning and suggested the following: _____

_____

### STEP III

Employee was absent on _____ due to the following reasons: _____

_____

I gave the employee a final warning that all future sick leave must be documented in order for the employee to be paid for the absence. I explained to the employee that he/she would have to submit medical verification of the illness at least through the end of the current sick leave period.

Date: _____ Supervisor: _____ Employee: _____
                              (Signature)                              (Signature)

SS# 9515

## UNAUTHORIZED LATENESS HISTORY

Employee's Name **Stephanie Kooma** Title **Inspector**
Supervisor's Name **Forest Hamler** Title **Captain**
Division/Sectio/Unit **Enforcement**

***The first three (3) Unauthorized Lateness may be handled informally.**

| Categories | Lateness # 1 | Lateness # 2 | Lateness # 3 |
|---|---|---|---|
| Day & Date | | | |
| AM / Lunch | | | |
| Reason | | | |
| | | | |
| Action Taken | | | |
| | | | |
| Employee's Signature | | | |
| Date | | | |
| Supervisor's Signature | | | |
| Date | | | |

## ***FIRST UNAUTHORIZED LATENESS WARNING

Meet with employee to review Lateness Policy.  Determine method (s) to assist the employee to improve.
A Conduct Conference Memorandum is required.

Day & Date of 4th Lateness _____ Circle One:    AM - LUNCH

Reason:_____

_____

_____

ActionTaken_____

_____

_____

Employee's Signature_____ Date_____

Supervisor's Signature_____ Date_____

(Send Copies To Employee, Division Manager & Personnel Office)

## ***SECOND UNAUTHORIZED LATENESS WARNING

Meet with employee to review Lateness History.  Warn employee that additional Latenesses can result in
Disciplinary Action.  A Conduct Conference Memorandum is required.

Day & Date of 5th Lateness _____ Circle One:    AM - LUNCH

Reason:_____

_____

_____

ActionTaken_____

_____

_____

Employee's Signature_____ Date_____

Supervisor's Signature_____ Date_____

SS# 9515

# NEW YORK CITY TAXI AND LIMOUSINE COMMISSION
## UNAUTHORIZED LATENESS RECORD

Employee's Name: __S. Kooma__  Emp. ID #_____  Title:_____

Supervisor: __F. Hamlor__  Work Unit: __Sg 2__

The first three (3) unauthorized occurrences of lateness may be handled informally.   Subsequent lateness requires Conduct Counseling Memorandum in addition to completion of appropriate section(s) of this form.

**FIRST WARNING 4TH Lateness Date:**_____   Check one: Arrival ☐   Meal ☐

(Meet with employee to review Lateness Policy.  Determined method(s) to assist employee)

Employee's Reason:_____

Supervisor's Action:_____

Employee's Signature:_____   Date:_____

Supervisor's Signature:_____   Date:_____

**SECOND WARNING 5TH Lateness Date:**_____   Check one: Arrival ☐   Meal ☐

(Meet with employee to review Lateness record.  Warn employee that additional lateness will result in Disciplinary Action)

Employee's Reason:_____

Supervisor's Action:_____

Employee's Signature:_____   Date:_____

Supervisor's Signature:_____   Date:_____

**THIRD WARNING 6TH Lateness Date:**_____   Check one: Arrival ☐   Meal ☐

(Meet with employee to review Lateness record.  Warn employee that additional lateness will result in Disciplinary Action)

Employee's Reason:_____

Supervisor's Action:_____

Employee's Signature:_____   Date:_____

Supervisor's Signature:_____   Date:_____

(Send copies to Division Manager & Personnel Office)

SS#9515

## Employee Emergency Annual Leave (EAL) Usage
## Supervisory Conference

**Date of Conference:** _____

**Employee Name:** S. Kooma _____

**Date of Absence:** _____    **Duration of Absence:** _____

_____

**Reason for EAL Usage:** _____

_____

_____

_____

_____

**Supervisor's Comments/Recommendations:** _____

_____

_____

_____

_____

**Instances of EAL Usage to Date:** _____

**Employee's Signature:** _____    **Date:** _____

**Supervisor's Signature:** _____    **Date:** _____

cc:    **Human Resources Division**

EAL Supervisory Form 10/02

SS# 9515

**TAXI LIMOUSINE COMMISSION**          **ENFORCEMENT DIVISION**

NAME OF EMPLOYEE *Off Stephanie Kooma*

| DATES ABSENT | NO. DAYS ABSENCE | REASON FOR ABSENCE | SUPERVISORY CONFERENCE INTERVIEW DETAILS AND ACTION TAKEN | SUPERVISOR'S NAME & TITLE | DATE OF MEETING | STEP |
|---|---|---|---|---|---|---|
| June | | | | | | |
| 5 | 1 | A/L | Vacation | JH | | |
| 13 | 1 | A/L | Vacation | | | |
| August 2015 | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**ABSENCE CONTROL SHEET**

SS#9515

CityTime

CityTime

Welcome Forest Hamlor, ID 1556!

## Search Leave Requests

| Search For | My Requests | Others' Requests | | First Name | s | Begins With |
|---|---|---|---|---|---|---|
| Dates | Custom Dates | | | Last Name | k | Begins With |
| *Start Date | 06/05/2015 | | | CityTime Id | | |
| *End Date | 08/05/2015 | | | PMS Ref # | | |
| Request Status | All | | | Active/Inactive Status | Active | |
| Request Id | | | | Pending Batch Approval Processing | All | |
| Request Type | All | | | Approval Org | Select | |
| Docs Required | All | | | CBU | | |
| | | | | Title | Select | |
| | | | | FLSA Status | All | |
| | | | | Leave Labor Agreement | | |
| | | | | Pay Labor Agreement | | |

\* = Required Field

| Select | Request ID | Name | PDC | Leave Starting | Leave Ending | Total Hours | Type | Reason | Status | MTV |
|---|---|---|---|---|---|---|---|---|---|---|
| ☐ | 166286092 | KOOMA, STEPHA... | 0022 | 06/27/2015 05:30 | 06/27/2015 15:15 | 08:45 | SICK LEAVE | Charged to Holiday | Approved Fi... | MTV |
| ☐ | 166230798 | KOOMA, STEPHA... | 0022 | 06/27/2015 05:30 | 06/27/2015 15:15 | 08:45 | SICK LEAVE | Charged to Holiday | Cancelled | MTV |
| ☐ | 166429830 | KOOMA, STEPHA... | 0022 | 07/11/2015 05:30 | 07/11/2015 15:15 | 08:45 | ANNUAL LEAVE | Scheduled Vacation | Approved Fi... | MTV |

Select All | Clear All

Approve

Version: CITYTIME_8.11_1.0.10

Press the "F11" key to toggle between "Full Screen" and "Normal" view.

  **PERFORMANCE EVALUATION**
**SEIZURE OFFICER**

**EMPLOYEE'S NAME:**   Kooma, Stephanie          **C/S TITLE:** Inspector

**SOCIAL SECURITY #:**   xxx-xxx-xx              **UNIT:** Squad #9

**SUPERVISOR'S NAME:**   Captain Jose Torres

**APPRAISAL PERIOD:**   From: Jan 1, 2016          **TO:**   December 31, 2016

All Standards are to be graded as follows:
**O**=Outstanding; **VG**=Very Good; **G**=Good; **C**=Conditional; **U**=Unsatisfactory; **X**=Un-ratable

**TASK # 1**   **Performs field patrol assignment.**
**STANDARDS**   Officer Kooma performs her duties as required, however, she has become a distraction among      **U**
her peers, at times casusing dissesion. At times, Officer is displays a combative
attitude towards supervision. Issue was addressed by the squad Captain.          (GRADE)

**TASK # 2**   **Issues summonses for violations of Rules and Regulations of the TLC or the Administrative Code.**
**STANDARDS**   Officer Kooma issues summonses with minimal errors. Officer is able to locate summonses,      **G**
but needs to vary her enforcement to include all types of violations.          (GRADE)

**TASK # 3**   **Seized vehicle for violations of Rules and Regulations of the TLC or the Administrative Code.**
**STANDARDS**   Officer is effective when issuing summonses for unlicensed activity. She is able to patrol      **VG**
independently to locate violations. Excels during joint operations with NYPD.
Officer Kooma is also a good decoy during street hail assignments.          (GRADE)

**TASK # 4**   **Appears and testifies at Hearings conducted at the Commission Tribunal with respect to summonses issued pursuant to the Administrative Code and TLC Rules and Regulations. Testifies at Criminal Court Hearings as part of their official duties.**
**STANDARDS**   Officers are no longer required to appear for Commission Tribunal Hearings unless personally
requested, as part of new Agency procedure. Officer does include proper and detailed          **G**
information in the narratives allowing for Sworn summons to stand on its own merits.          (GRADE)

**TASK # 5**   **Interacts with and assists member of the public and FHV industry when necessary**
**STANDARDS**   Officer Kooma conducts herself in a professional manner when dealing with both the
public and For-Hire industry. She exhibits a positive attitude.          **G**
          (GRADE)

**TASK # 6**   **Reports to various duty assignments and abides by Absence Control policy of the City and the Agency.**
**STANDARDS**   Officer Kooma has accumulated 7 instances of documented sick leave and 4 instances of
undocumented sick leave for the year. Officer Kooma was also spoken to regarding her time          **G**
management, in particular returning to duty post meal hour in a timely manner.          (GRADE)

**TASK # 7**   **Operates City vehicles and safeguards all issued equipment.**
**STANDARDS**   Officer operates city vehicle in a safe manner, following all vehicle and traffic regulations.
Employee properly safeguards all issued equipment. Officer informs supervision and OFFM          **G**
of any issues concerning agency vehicles and equipment.          (GRADE)

The employee's overall rating is:

☐ Outstanding      ☐ Very Good      ☑ Good      ☐ Conditional      ☐ Unsatisfactory      ☐ Un-ratable

**PERFORMANCE EVALUATION**

SEIZURE INSPECTOR'S EVALUATION          Page 1 of 2

SS# 9515

  **PERFORMANCE EVALUATION**
**SEIZURE OFFICER**

## COMMENTS REGARDING OVERALL RATING
(Include attendance, punctuality, impact on the work of others, and other factors if relevant to the employee's performance.)

Stephanie Kooma is a good officer who often meets productivity expectations, rarely exceeding them. She does however rise up to the challenges of specialized assignments, such as undercover street hails and Joint operations with NYPD. At times she does need to be motivated while on general patrol assignments to expand her enforcement. Officer Kooma does follow orders given, while simultaneously advocating for the squad. She is a team player at times, although there has been instances, which have been documented by supervision, where she was observed not following orders. Officer Kooma does issue summonses with minimal errors and maintains a proper log book. She hasaccrued 7 instances of documented sick leave and 4 instances of undocumented sick leave for the year in review.

## PLANS AND RECOMMENDATIONS
(Plans to improve employee's performance; plans and recommendations to capitalize on employee's strengths; plans and recommendations to change conditions.)

Officer Kooma is a veteran officer capable of getting the job done. She is effective when she puts her mind to it. She maintains a professional demeanor in the field and a command presence on car stops. She has displayed tendencies of not working to her potential depending on the type of enforcement presented. Officer Kooma would benefit from a tour rotation as it would allow her to experience other facets of enforcement. It would also allow her to share her knowledge with other officers.

## COMMENTS ON APPRAISAL INTERVIEW

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| **Employee's Signature** | **Date** |
| **Supervisor's Signature** | **Date** |
| **Deputy Chief's Signature** | **Date** |
| **Reviewer's Signature** | **Date** |

Stephanie Luna AKA Officer Stephanie Kooma
(enclosed SCAN DISK W/AUDIO)

March 15 2021
1120AM WP

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAR 15 2021 ★

BROOKLYN OFFICE

ATTN: PRO SE OFFICE





RECEIVED
MAR 15 2021
PRO SE OFFICE

RECEIVED
MAR 15 2021
PRO SE OFFICE


USMS